## Samuel F. Rush et al. v. Jonas M. Rush et al.

1. EQUITY—*Jurisdiction in Matters of Account.*—Where one party is jointly interested with other parties in the funds to be recovered by a suit, a court of equity is the proper forum in which to adjudicate the controversy.

**Memorandum.**—Bill for an accounting. Appeal from the Circuit Court of Iroquois County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the December term, 1893. Reversed and remanded. Opinion filed May 22, 1894.

The opinion states the case.

APPELLANTS' BRIEF, KAY & KAY, ATTORNEYS.

A party can not sue himself at common law, such procedure being only permissible in equity. 17 Am. & Eng. Ency., 497.

He can not be both plaintiff and defendant, either solely or with others. Where the plaintiff and defendant is the same person a suit at law can not be entertained; the remedy is in a court of equity.

Jonas Rush was jointly interested in the funds to be raised by a suit on this bond, hence a suit at law would have involved the legal absurdity of a person suing himself. McElhanon v. McElhanon, 63 Ill. 457; 1 Chitty Pl. 40; Warren v. Stearns, 19 Pick. 73; Pearson v. Nesbit, 1 Devereux's Law, 315; 17th Am. Dec. 569.

CHARLES W. RAYMOND, attorney for appellees.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This was a bill for an accounting filed in the Circuit Court by appellants. After a hearing it was dismissed by the court for want of equity.

From the record filed in this court, it appears that one Nancy Rush, Sr., desiring to divide among the children of

herself and deceased husband, her personal property and the lands held by her in fee and as dower, and to secure to herself a yearly income, entered into an arrangement with them, whereby a satisfactory division was made and each child was charged with the payment of a certain part of said yearly income. Prior to such arrangement her estate had been managed by her son George. He died and his brother John Rush was appointed administrator of his estate. Into the administrator's hands came two notes executed by one George Pierce for rents due as tenant upon the lands of Nancy Rush, one for $500 and the other for $1,000. For the purpose of collecting money due her and the payment of debts which had been contracted by her, it was arranged by the children that appellee Jonas M. Rush, one of the children, should attend to the business of making such collections and should pay off out of such collections her debts, and should receive as a compensation for attending to the same $1.50 per day. The following bond was executed :

" Know all men by these presents, that we, Jonas M. Rush and John W. Scott, of the town of Milford, in the county of Iroquois, in the State of Illinois, are held and firmly bound unto the heirs of Nancy Rush, Sr., widow of Samuel Rush, deceased, of the town of Milford, in the county of Iroquois and State of Illinois, in the sum of six thousand dollars, for the payment whereof well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

Witness our hands and seals this 3d day of August, 1891.

The condition of the above obligation is such, that whereas the said Jonas M. Rush has been this day appointed by the said heirs of Nancy Rush, Sr., to collect all debts, rents, mortgages and credits now due the said Nancy Rush, Sr., or that may hereafter become due, and to pay all just debts against the said Nancy Rush, Sr., or against her estate so far as the moneys, credits, rents and profits may go, and the said Jonas M. Rush shall have the collection of all the promissory notes belonging to the said Nancy Rush, Sr.,

except one note against F. S. Rush and in favor of John Rush. And the said Jonas M. Rush shall make a true and correct report of all his doings on or before the first day of February, 1892. And it is hereby stipulated that the said Jonas M. Rush shall be allowed the sum of one dollar and fifty cents per day and all necessary expenses for all the time necessarily expended in collecting and settling said estate.

Now, if the said Jonas M. Rush shall perform all the covenants above mentioned, then this obligation to be void, otherwise to remain in full force and effect.

Jonas M. Rush.    [Seal.]
John W. Scott.    [Seal.]

Signed, sealed and delivered in presence of James A. Laird."

Among other claims for collection, the two notes mentioned were placed in Jonas' hands. Jonas was then and had been for some time engaged in buying and selling hay.

Appellants contend that while engaged in that business he bought from Pierce all the hay raised upon the farm occupied by him as tenant for the year 1891, in advance of the rent becoming due as represented by the notes, and at a time when there was more hay and grain on the farm subject to the landlord's lien than was necessary to secure the rent, and that Jonas bought the hay on his own account, expecting to make a profit for himself, but owing to mismanagement on his part and to a decline in the price of hay, he lost money on the deal, and when called upon to report the amount due on the Pierce notes on the first of February, 1892, as required by his bond, he refused, insisting that he bought the hay, not for himself, but for the benefit of all those having an interest in the notes, and claiming that he had surrendered the note to Pierce and had taken hay in lieu of what was due on the notes, and insisting that the parties in interest should each bear an equal portion of the loss sustained on the hay deal. The parties failing to effect a settlement, this suit followed.

Inasmuch as Jonas Rush was jointly interested with the other children in the funds to be raised by a suit on the

Rush v. Rush.

bond, a court of equity was the proper forum in which to adjudicate the controversy.

The evidence shows that Jonas Rush bought of Pierce 282 tons of hay at $6 per ton and surrendered the notes. He lost about $350 on the deal because of the fall in price and because some of it was damaged. He claims that he was authorized to make such purchase by the parties interested and did so in good faith. If he was so authorized it is quite clear that all the parties and not Jonas alone should sustain the loss of the transaction. That he was so authorized is explicitly denied, however. There was some talk with some of the children before the execution of the bond and before he had entered upon the discharge of his duties as collector about the prospect of collecting from Pierce, and it was thought best at that time to buy the hay. This talk was had at a time when the prospects of a good crop and the ability of Pierce to meet his obligations were not flattering. As the season advanced prospects brightened. and at the time the hay was purchased there was no sufficient ground for apprehending that Pierce would not be able to meet his obligation. We do not think Jonas apprehended such a thing, because he purchased $246 worth of hay over and above what was sufficient to pay off the notes. It would make this opinion too lengthy to discuss in detail the evidence, but we have carefully examined it and have reached the conclusion not only that there was no sufficient authority given to Jonas to purchase the hay on account of all interested in the notes and to surrender the notes to Pierce but that he made the purchase on his own account. We are led to the belief from the evidence that had the deal turned out fortunately no such claim as that set up by Jonas would have been advanced.

We think he should be compelled to account for the amount of the notes, and the decree will therefore be reversed and the cause remanded.